## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| MICHAEL BRANNIGAN, ATTORNEY-IN-FACT FOR PATIENT CM, and WORLDWIDE AIRCRAFT SERVICES, INC., d/b/a/ JET ICU,<br><br>   Plaintiffs,<br><br>  v.<br><br>EXCELLUS BLUE CROSS AND BLUE SHIELD,<br><br>   Defendant. | CASE NO. |

## <u>COMPLAINT</u>

By way of this Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiffs Michael Brannigan, Attorney-in-Fact for Patient CM and Worldwide Aircraft Services, Inc., d/b/a Jet ICU ("Jet ICU") (collectively, "Plaintiffs") bring this action against Excellus Blue Cross and Blue Shield ("Excellus" or "Defendant").

1. This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Excellus denial of reimbursement of Jet ICU for air ambulance services.

2. On December 4, 2019, patient CM, a member of defendant who was on the island of the Bahamas was required to have emergency treatment in an acute medical facility due to an acute cardiac episode (symptoms of cardiac arrest). The medical doctor in the Bahamas made the medical determination that the patient needed to be evacuated.

3.      Defendant informed Plaintiff that preauthorization was not required due to the emergency nature of the Patient's condition.

4.      The same day, Plaintiff evacuated the patient to a Florida level-one trauma center, St. Joseph's Hospital, Tampa, Florida.  Defendant reimbursed the ground ambulance portion of Plaintiff's bill as medically necessary but refused to reimburse the air transportation invoice at all, claiming that it was medically unnecessary.

5.      Specifically, defendant contended that according to its "corporate" medical policy air ambulance service was medically necessary "only to the nearest facility that can provide the appropriate care when any one of the following occur: A. The patient's medical condition, as determined by Health Plan Medical Director review, required immediate and rapid ambulance transportation necessary to minimize risk of death or deterioration of the patient's condition that could not have been provided by land ambulance. B. The point of pickup is inaccessible by land vehicle; or C. Great distances or other obstacles (e.g. traffic, weather conditions) are involved in getting the patient to the nearest hospital with appropriate facilities if the patient were transported via land/ground ambulance."

6.      This contention was made in Excellus' January 20, 2020 Initial Adverse Determination.  However, the denial was not made by its Health Plan Medical Director, who is not referenced in the Determination.   Although the Determination mentions Princess Margaret Hospital in Nassau, upon information and belief this hospital was not a level-one trauma center, which was required to treat the Patient's symptoms.

7.      Defendant's denial also summarily ignored the Bahama-based physician, who diagnosed the patient and insisted on medical evacuation from the Bahamas to a level-one trauma center.  Defendant placed its own health care decision making over the Patient's doctor.

8.      Defendant's determination is further undermined by its decision to reimburse the land ambulance charges in Tampa, Florida.  It also paid the mileage charge from the ship infirmary to the aircraft. If Defendant had actually determined that the Patient's condition could have been treated in a hospital in the Bahamas and the patient brought to that hospital via land ambulance, it would not have paid for a land ambulance in Tampa.  The fact that it did illustrates what is at issue: Defendant's arbitrary and capricious decision making to save money at the expense of its member rather than an actual and legitimate medical necessity determination.

9.      On February 9, 2020, Defendant issued its Final Adverse Determination.  Again relying on its Excellus Medical Policy it denied reimbursement for the air ambulance charges as not medically necessary.

10.     This time, however, the unnamed medical director referenced in the letter did not base the determination on nearness to Princess Margaret Hospital.  It was based on the contention that cardiac services were available at the "Medical Pavilion" in the Bahamas.

11.     The Medical Pavillion is not a hospital. It is a simple clinic.  It is not open at night, much less 24 hours.  It is not a level-one trauma center.  Excellus' medical director, whoever that is, cannot be permitted to substitute his or her medical opinion over that of the Patient's treating physician.  That physician, who put hands on the patient, ordered a medical evacuation to a level-one trauma center, not an island clinic.

12.     After Plaintiff submitted an invoice on a CMS-1500 form to Defendant, as required, for $127,319.00, Defendant paid $0. The member continues to owe this amount.

13.     In this action, Plaintiff seeks the usual and customary amount governed by Fla. Stat. § 627.513(5) for emergency services (net of the applicable copayment).

14.     Alternatively, Plaintiff seeks the out-of-network out-of-area rate specified in the Excellus Certificate of Coverage issued to patient CM.

## JURISDICTION

8.      The Court has subject matter jurisdiction over Jet ICU's claims under 28 U.S.C. § 1331 (federal question jurisdiction).

9.      The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Excellus systematically and continuously conducts business in the State of Florida, and otherwise has minimum contacts with the State of Florida sufficient to establish personal jurisdiction over it.

10.      Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Excellus transacts business in the Middle District of Florida; (b) Excellus conducts a substantial amount of business in the Middle District of Florida, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the Middle District of Florida; and (c) Plaintiff transacts business in the Middle District of Florida.

## PARTIES

11.      Plaintiff Michael Brannigan is Attorney-in-Fact for Patient KD pursuant to a Power of Attorney.  Mr. Brannigan is attorney and agent for Plaintiff Worldwide Aircraft Services, Inc., d/b/a Jet ICU., is an air ambulance company whose principal office is in Tampa, Florida. It was incorporated in Florida.

12.      Defendant Excellus Insurance Companies, Inc., is a health care insurance company. Its principal office is in 165 Court Street, Rochester, New York.

## FACTUAL ALLEGATIONS

13.      Plaintiff provides air transport for critically ill and injured patients to medical facilities with fixed wing jet aircraft which are crewed by trained medical personnel.

14.     Plaintiff must purchase or lease and periodically inspect and repair its aircraft in accordance with federal law and FAA rules and regulations; and maintain a qualified flight crew and medical staff to meet the demands of emergency air ambulance services.

15.     These laws, rules, and regulations impose significant costs and expenses on Plaintiff.

16.     After the patient became critically ill in the Bahamas, Plaintiff transported the patient to St. Joseph's Hospital, Tampa, Florida via air ambulance on December 4, 2019.

17.     At the time Plaintiff performed its services, Plaintiff did not have a pre-negotiated contract with Defendant.  Plaintiff was out-of-network with Defendant, meaning it was not part of Defendant's network of providers.

18.     Under the Certificate, air ambulance services are covered when the member is taken from a medical emergency to a hospital.

19.     Defendant did not contest that the air ambulance services were covered under the Certificate, that a medical emergency existed, or that the member should have chosen an in-network provider.

20.     Fla. Stat. § 627.64194 states as follows:

(2) An insurer is solely liable for payment of fees to a nonparticipating provider of covered emergency services provided to an insured in accordance with the coverage terms of the health insurance policy, and such insured is not liable for payment of fees for covered services to a nonparticipating provider of emergency services, other than applicable copayments, coinsurance, and deductibles.  An insurer must provide coverage for emergency services that:

(a)     May not require prior authorization.

(b)     Must be provided regardless of whether the services are furnished by a participating provider or a nonparticipating provider.

(c)     May impose a coinsurance amount, copayment, or limitation of benefits requirement for a nonparticipating provider only if the same requirement applies to a participating provider. . . .

(4) An insurer must reimburse a nonparticipating provider of services under subsection[] 2 . . . as specified in s. 641.513(5), reduced only by insured cost share responsibilities as specified in the health insurance policy . . .

21.     Section 641.513(5), Fla. Sta. states:

Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

(a) The provider's charges:

(b)     The usual and customary provider charges for similar services in the community where the services were provided; or

(c)     The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

22.     This statute requires that out-of-network providers must be reimbursed based on the lesser of the provider's billed charges, the negotiated rate between the provider and insurer, and the provider's usual and customary charges in the provider's community where the services were provided.

23.     Defendant did not negotiate a rate with Plaintiff.  Therefore, there was no negotiated rate.

24.     The statute provides that the usual and customary provider charges be reimbursed.

25.     Defendant did not reimburse Plaintiff's usual and customary charges and violated Fla. Stat. § 627.64194.

26.     Alternatively, Defendant breached the terms of the Certificate.

27.     By way of background, the Blue Card Program and the National Accounts System, in which each Blue Cross Blue Shield ("BCBS") licensee must participate, including Defendant Excellus, was the direct result of the practice of all the BCBS licensees, under the direction of the Blue Cross Blue Shield Association ("BCBSA"), to engage in exclusive geographical market allocation.

6

28.     Under this practice, each BCBS licensee was allocated an exclusive geographic market to offer health insurance. This practice continues today. It will not be substantially changed by the terms of the pending settlement agreement in the Subscriber Track in *In re BCBS Antitrust Litigation* Master File 2:13-cv-20000-RDP (N.D. Ala).

29.     To make this mandatory agreement work, the BCBSA created Home and Host Plans.

30.     The BCBS insurer in the exclusive geographical area through which the member is enrolled is the Home Plan. In this case, it was Excellus. The BCBS insurer located in the exclusive geographical area where the service is provided is referred to as the Host Plan.

31.     These restrictions insulate the Home and Host plans against competition from each other in their respective exclusive geographic market areas.

32.     When out-of-network providers are outside of the Home Plan's exclusive service area, they are considered to be "out-of-area" providers.  Jet ICU was an out-of-network out-of-area provider.  Under the Certificate, the reimbursement methodology for such a provider was distinct from an out-of-network in-area provider.

33.     Under the Certificate, Jet ICU's emergency services were rendered outside Excellus' service area. The Certificate requires that under this circumstance the claim must be priced as required by applicable state or federal law – in this case, Fla. Stat. § 627.64194.  The Certificate also states that "the Maximum Allowed Amount for out of area claims may be based on billed charges."

34.     Defendant Excellus failed to reimburse Jet ICU either of the amounts set forth in the Certificate, violating ERISA.

35.     Jet ICU through Mr. Brannigan sent letters appealing the under-reimbursement, attaching medical documentation, and the CMS-1500 form (the bill).  Plaintiffs exhausted their administrative remedies.

36.     Plaintiff Brannigan has a Power of Attorney from Patient KD, providing ERISA standing.

37.     29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

38.     Defendant did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder. Defendant did not provide full and fair review to Plaintiff.

39.     Under ERISA, when an insurer fails to follow the procedures set out in the Plan, as here, the claimant is deemed to have exhausted his administrative remedies.

40.     Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

## COUNT I

### CLAIM AGAINST DEFENDANT EXCELLUS FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

41.     Defendant Excellus is obligated to pay benefits to Plan participants and beneficiaries in accordance with the terms of the Plan's Certificate, and in accordance with ERISA.  This obligation arises under ERISA.

42.     Defendant Excellus violated its legal obligations under this ERISA-governed Plan when it denied payment to Plaintiff for emergency air ambulance services provided to Patient, in violation of the terms of the Certificate and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

44.     Plaintiff Jet ICU submitted invoices to Defendant Excellus for $127,319.00.

45.     Defendant Excellus paid $0.

56.      Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiffs' claim was originally submitted to Defendant Excellus. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant Excellus.

**WHEREFORE**, Plaintiffs demand judgment in its favor against Defendant as follows:

(a)     Ordering Defendant to recalculate and issue unpaid benefits to Plaintiffs;

(b)     Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

(c)     Awarding Plaintiffs prejudgment interest; and

(d)      Granting Plaintiffs such other and further relief as is just and proper.

Dated: October 6, 2021

/s/ George G. Angeliadis

**George Angeliadis, Esq.**
Florida Bar No. 80081
**James L. Magazine, Esq.**
Florida Bar No. 847232
**Christopher Dyer, Esq.**
Florida Bar No. 68674
**The Law Offices of Lucas & Magazine, PLLC**
8606 Government Drive
New Port Richey, FL 34654
(727) 849-5353 [Tel]
(727) 845-7949 [Fax]
Service of Pleadings only: lucasmagazine@lucasmagazine.com
Secondary email: Mjarrett@lucasmagazine.com

Robert J. Axelrod (Pro Hac Vice)
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

*Attorneys for Plaintiffs Michael Brannigan, Attorney-in-Fact for Patient CM and Worldwide Aircraft Services, Inc., d/b/a Jet ICU*